May it please the Court, Charles Byrd on behalf of Cubic. I would like to start with the Court's order of yesterday requesting us to address an OFAC advice letter. I intend to present six points of departure from that letter to what I consider decisive in this case. If, considering the Court's questions, I get through those six points, I think that will probably be about enough for today, though I'm certainly prepared to discuss any aspect of the case that the Court wants me to. The advice letter says that to the extent the judgment in that case relates to services provided by Iranian company prior to the existence of the sanctions imposed against trade with Iran beginning in May of 1995, you do not need a license from OFAC to pay the judgment. May of 1995, of course, refers to Executive Order 12959 issued on the 5th of May, and the authority cited by the OFAC Director is one of the ITRs, Section 560.204. We are addressing Section 560.510. It applies to awards of international tribunals and many other proceedings, including arbitral proceedings. A key phrase is that they involve disputes between the government of Iran and United States nationals, and a second key phrase is that they include claims arising before 12.01 p.m. Eastern Daylight Time on May 7, 1995. That is the exact effective time of sanctions under Executive Order 12959, Section 8. First point of departure is this. The advice letter provides no information about Section 510 because the advice letter concerns a dispute between two private corporations, and Section 510 concerns disputes between a private party and the government of Iran. Section 560.304 clearly defines the government of Iran to include its ministries, its agencies, its instrumentalities like the Ministry of Defense. The second point of departure is this. And just to make sure I understand your point, and why is that a relevant distinction? Because the director of OFAC could not have written a letter saying that a corporation could pay a judgment to Iran under Section 560.204, which is the authority cited. This involves a dispute not between private corporations as to trade. It involves the government of Iran. No, no, I understand the distinction. You just reiterated the distinction, but why should it matter whether it's a private corporation or the government of Iran? For purposes of analysis, why wouldn't advice given that's applicable as to a corporation in Iran be applicable by analogy also to the government? Because making that analogy would violate other elements of the text, which I will follow up with. The fact that it's a private corporation versus the government of Iran tells you this much and this much clearly. You have to look at 510, not at the prohibitions under 204, to determine whether in the total context of 510, paying the ICC award is prohibited. Which takes me to the second point of departure. The director's letter refers to a judgment, a court judgment. 510, as I recited in the beginning, refers to awards of tribunals, including arbitral tribunals. When you put the first two points of departure together, then you have one complete answer to your question, Your Honor, and that is this is an award of a tribunal. It is not a judgment of a court. Therefore, Cubic could not pay it, and under no circumstances should the United States District Court for the Southern District of California have turned it into an apparently payable judgment. I'm sorry, once again, I'm not sure I understand why the distinction matters. You're pointing to distinctions. You're saying one of them is that it's a corporation and not the government. Now you're pointing to different distinctions. You said this is an arbitral tribunal and not a court. Okay, so both of those are distinctions, but I'm not sure why those are relevant distinctions. Distinctions that should make a different result in our case. That is why it is okay to pay these monies to a Iranian corporation when awarded by a court. It's not also okay to pay an arbitral judgment to the Iranian government. To the extent that the advice of OFAC provides any information about how the Department of Treasury interprets these regulations, and particularly a trade regulation, 560.204, what those two distinctions tell you is that advice is meaningless to this court. is inappropriate because 510, according to its text, in two different ways, says we have a different regulation, a different part of the scheme of regulations. Number one, that applies to a corporation. And number two, that applies to arbitral and other international tribunal decisions. And you can't write the same advice to this court or to the payer corporation. 510 says all that, huh? Yes. It says you can't write the same advice. No, 510 did not anticipate that many years later the director of OFAC would write a letter about payment of a judgment based on. So what does 510 say that, I mean, what you are saying 510 says is your inference or your argument from what 510 says. It's really not what 510 actually says. In summary, 510 says. What is it about 510 that makes the advice here inapplicable to a 510 situation? I've gotten to two things. If I can add a third. No, you haven't gotten to anything at all. You've just pointed to two distinctions. You haven't said what it is about 510 that makes those distinctions relevant. Thank you, Your Honor. 510 says that specific licenses will be issued from time to time. I'm looking at 510. Where in 510 are you reading? A. It starts except as otherwise authorized. Correct. Where are you reading? Just so I can follow along. It says specific licenses may be issued on a case-by-case basis. This is where, line two of? Yes. Okay. On a case-by-case basis to authorize transactions in connection with awards. And it goes on at great length. I don't want to read to the court what's in front of the court, but awards by international tribunals, arbitral tribunals, and it covers one, two, three kinds of transactions. And three, the kind of transaction here that requires a specific license, is a financial transaction relating to the resolution of disputes at tribunals, including transactions related to the funding of proceedings, accounts, et cetera, participation, representation, testimony before a tribunal, and the payment of awards of a tribunal. When you get through the whole text, it tells you that OFAC will issue a specific license to pay an award of a tribunal. But this advice also contemplates that sometimes you need a license, but here it says, oh, if the events happened before May 1995, you don't need a license. Yes, it does, Your Honor. And I will take you then to the third point of departure, which is about dates. Because what the OFAC letter says is if you have a judgment between private corporations about a trade transaction that occurred before the inception of the sanctions, then you can pay that judgment. But explicitly in 510, we are covering disputes that arise, claims arising before 12.01 a.m. EDT, May 7, 1995. That's toward the bottom of A before we have paren 1, close paren. In other words, this regulation was written specifically to look back before the trade sanctions came into existence. Now, when you take all three points of departure, I think the court should be able to tell that, number one, 510 can't have anything to do with trade that was prohibited after, or for that matter, before May 10. 510 looks to the date a claim arose. And the question here, or the point here, is that the claim that's covered by 510 arose before the sanctions went into effect. So now we can... So which in the three categories does your client's transaction fall under, 1, 2, or 3? 3. We have payment of awards of a tribunal. Financial transaction related to the resolution of dispute at tribunals. Correct. My fourth point of departure, Your Honor, is this. In the fourth brief on page 8 at footnote 1, MOD admits that Cubic cannot pay the award or the underlying award or the judgment. It explicitly admits that Cubic cannot pay the award or the judgment under section 510. As we pointed out in the third brief, our opponent in this case is not another private corporation. So what happens to the money in this case? Does Cubic just have to keep it? Or does it have to pay it over to the U.S. government, or put it in trust for future collection by Iran if the sanctions are lifted? Cubic doesn't have to do anything with money right now, Your Honor. But the correct answer to that is that Iran has filed, and still has pending in the Iran-United States Claims Tribunal in The Hague, Claim No. B61. And in Claim No. B61, Iran says that the United States government, not Cubic, unlawfully prohibited Cubic from delivering the services and the air combat training system, and that Iran is entitled to collect from the United States government not only what it claims in the Cubic judgment, but presumably more. And the correct place for this to be resolved, and for the United States to make any derivative claim if it wants to against Cubic, is through the resolution of Claim B61 in the Iran-United States Claims Tribunal. I suspect that's one of the reasons. I mean, Iran obviously wants to hold onto this claim for some purposes, but I suspect that's one of the reasons that Iran, as a nation-state, not just as a party litigant, conceded in this court, as I recited in footnote 1 of page 8 of their brief, that Cubic cannot pay this award. My other two points of departure, I see the yellow light is on, I don't want to abuse my time. One is that Section 560.525 of the ITRs reconfirms exactly what's in 510. It allows people to represent parties in disputes like this, represent Iran in disputes like this, but forbids paying for them. And the other is Circuit Stare Decisis under Besigi, where this court has already said that the court needs to interpret these regulations to their purpose as well as their text. Their purpose in Besigi, identified in Besigi, was to avoid enhancing the economy of Iran. A guarantee was unenforceable. It's pretty clear that for the federal courts to enforce the ICC award as a judgment and require Cubic to pay many millions of dollars to Iran, that violates directly the spirit of these rules. I would appreciate it if the court could give me a very short time in rebuttal. We'll see. Thank you, Your Honor. Could you tell me what's the site for that footnote that you say MOD admitted? Page 8 of the fourth brief, footnote 1. Okay. We'll hear from the other side. Thank you, Your Honor. Please, the court. I'm Steve Karakis, and I represent the Ministry of Defense of the Republic of Iran. Where's the little light? It's right in front of you. Just look down. Okay. Oh, you don't have it? Okay. Thank you. Anyway, I'll start off with the issue that was in the order yesterday, interpreting the guidance letter in conjunction with a safe part of that. I'm not sure you have to go through the whole analysis. The question is, do you disagree? I mean, the argument just advances that you admit that they can't, under 510, pay without a special license. Is that correct? I say they might need a specific license to pay under 510. It's unclear. In fact, in the Elahi case, where the Supreme Court looked at this issue, they, in fact, held that no specific license was necessary. It was issued in 2009, and they specifically say on page 1739, the interest, quote, the interest falls within the terms of the Treasury Department's general license authorizing transactions involving property in which Iran has an interest, where the interest in property arises after January 19, 1981. The only reason we hedged in the footnote and said perhaps we do need specific license is because this is a constantly changing area. There's new CFRs that come up. There's new executive orders. This whole issue of whether the judgment can be enforced or not enforced is a separate issue from whether Judge Brewster had the authority to enter and confirm the arbitration award as a judgment. We haven't sought to enforce the judgment yet. In fact, once the judgment becomes final, it has to go back to the district court, and there's a dozen lien holders who have default judgments against Iran. They will have to be sorted out, and after it's sorted out, Judge Brewster will have to decide whether or not a specific license is needed and whether Iran needs to apply for it. But this is all premature because all we're talking about on this appeal is whether Judge Brewster had the authority to confirm the award. I will go back to addressing the issue of the guidance letter. The guidance letter deals only with the payment of a judgment. 510 deals only with financial transactions involving a tribunal. There's a disconnect here. This judgment does not fall under 510, as the Supreme Court said in Elahi, because we have a judgment now that's been washed or cleansed or authorized by the New York Convention, which is a treaty of the United States. If we had a tribunal award and we came here and tried to enforce it, it looks like 560.510 would apply. We're not doing that. We're not seeking to enforce a tribunal award. We came, we obtained, we confirmed it as a judgment. We contend that that was properly done. It doesn't fall under 560.510. Neither did the Elahi case. Did the Supreme Court of Elahi think so? I will address- Given Judge Brewster's confirmation of the award, it is now a judgment of the U.S. District Court? Yes, Your Honor, it is. If you would like, I can go through the points of departure that are raised by opposing counsel. He claims that 560.204 does not cover Iran. I think the letter makes it very clear that it does. It states in the second paragraph, quote, The Iranian Transaction Regulations 31 CFR Part 560 prohibit the exportation, re-exportation, sale or supply directly or indirectly from the United States or by a U.S. person wherever located of any goods, technology, or services to Iran or the government of Iran, section 560.204. Secondly, opposing counsel states that 510 refers to arbitral tribunals. He's absolutely correct. It's limited to arbitral tribunals. And not just arbitral tribunals, it's limited to financial transactions involving arbitral tribunals. So therefore, when Judge Brewster entered this judgment, he was authorized to do so. We did not seek to enforce payment. All we sought was to confirm the award. I think the next point I already discussed, which was the footnote where we say we might need a specific license. And we might need a specific license when it comes time that, in fact, the judgment can be paid. And unless you have any further questions, I think I've addressed all the issues. So your view is that you need a specific license at all at the time of enforcement and not at the time of confirmation? Right. Yes. And I think that's what 510 says as well. You know what? I haven't addressed the cross-appeal points. There are just two points on the cross-appeal. The first was that the arbitrators, when they entered the award, only entered interest up through the time of the arbitration award, which is normal. But there were 19 months which intervened between the arbitration award and when, in fact, the arbitration award was confirmed as a judgment. Judge Brewster did not think that he had the discretion to authorize additional pre-judgment interest. But I cited numerous cases in my brief which, in fact, they were New York Convention cases where the district court did allow pre-judgment interest. And it's not a matter of some small import because it's almost a half million dollars in additional interest. Judge Brewster did not use any discretion. He thought he was not authorized to exercise discretion. So we would prospect a request that it be remanded to Judge Brewster to, in fact, make a determination in his discretion whether to add that additional interest or not. The very last point is the attorney's fees. It's very clear, looking at the history of this, that for more than 20 years, CUBIC has been dilatory and has done everything they can to avoid reimbursing Iran for the money which it obtained on the contract which it did not earn, as determined by the arbitrators. And what's the authority for awarding attorney fees? What's the threshold that gets you? Because normally, under the American rule, you don't get attorney's fees. So what is it that allows attorney fees here? Right. It has to be that the losing party acted in bad faith, vexatiously or for oppressive reasons and refusing to comply with it. That's under the New York Convention? No, that's case law, Sheet Metal Workers, Ninth Circuit, 1996 case. And I think that if you look at the history, CUBIC has always, from the very beginning, reached out to strike that. Sorry. The Ministry of Defense has, from the beginning, tried to reach out to CUBIC to try to resolve this, both before the arbitration and afterwards. And CUBIC has had a response. All we could do on this record, I assume, is we could decide that Judge Brewster was wrong, that that rule wouldn't apply. But we can't determine on this record the factual predicate for that, can we? I believe you're correct, Your Honor. We would have to be remanded to the district court for findings of that. All right. Thank you. And I'd like to reserve three minutes for any rebuttal to my cross-appeal. You can take a minute for rebuttal. Thank you, Your Honor. I want to address only two things. First is the Elahi case. The Elahi case is about the Iranian Asset Control Regulations, IACRs. All of those start with 5.35, and it's about blocking under original Executive Order 12-170. This case is about the IATRs, which contain 5.10, and which in Part 560.101 explicitly state that they are independent of the Iranian Asset Control Regulations. They cite 5.35, say we're different from this, and it doesn't matter if there's a license under the IACRs. If this set of regulations says there must be a license, there must be a license. So we're talking about completely independent sets according to their own text. And the second, with respect to the cross-appeal, I will simply say ---- I'm sorry. I did not understand what you said. Were you referring to the letter, the assembly letter? No, I was not. Counsel raised the Elahi case and said ---- Elahi case? Yes. How do you deal with the letter? He points to paragraph 2 of the letter that does seem to cover the government of Iran. It covers the government of Iran if there was trade with the government of Iran prior to the trade regulations. Again, we do not have trade. We have a 5.10 arbitral transaction. Well, it's the underlying transaction. The arbitral is based on an underlying transaction, which is what the letter is talking about, an underlying transaction which was involved trade with Iran. One of my problems, Counsel, is none of these arguments were advanced in the district court. So suddenly we don't have any record on any of these from the district court. You're raising these arguments first time on appeal, are you not? Yes. I don't see how there could be a record in the district court about the kinds of issues that we're discussing here. Because why? We're not quarreling about facts that occurred between the Ministry of Defense and Cubic. Well, but the legal arguments. Counsel has argued that you're premature on all of this because all they were getting was a confirmation of an award, and all that's before us is confirmation of an award. If you want to raise these arguments with respect to enforcement, then that's down the road. Is that wrong? That is wrong. Our position is that under the New York Convention, because the award cannot be paid and the judgment cannot be paid, the award violates. Then he should not have confirmed the award. Yes, he should not. Well, then why didn't you raise that before Judge Brewster? The record is silent. I can give the Court some insight. Counsel, and we don't put the argumentative papers in. Well, actually. Yes, Your Honor. I'm not sure we want answers out of the record. Perhaps a different way of phrasing the question is, not having raised it before the district court, why aren't you out of luck here? Regardless of your reason. It's an issue of pure law. The Court has discretion whether to take it up or not to take it up. And given that this involves a If I were Judge Brewster and I got reversed on an argument that wasn't made to me, I would be unhappy. Judge Brewster It does happen, but I can't. Well, since Your Honor personalizes it, he's retired. And I'm also sure that the Court of Appeal, in writing a decision He's senior. He's not retired. I believe, Your Honor, he's not serving, at least, in any event. You did argue, you did My colleagues are absolutely correct for bringing to your attention that you didn't make these arguments below. Correct. And I find that particularly interesting in light of the fact that you made the following argument You did make the following argument in front of the district court. Iran, quote, Iran shifted its factual and legal theories throughout the proceedings, thereby denying Cuba a meaningful opportunity to present its case. So sauce for the goose is not sauce for the gander? That argument, I think, provides some insight for why the arguments made today weren't made below. I think you can hear counsel who handled the arbitration trying to obtain vindication. The shifting ground refers to the proceedings and attempt to go behind the arbitral award and set aside the arbitral award because So it's wrong for them to shift positions but not for you? I would put it this way. The arbitrators made their award regardless of the shifting of positions. We lost that. So now you're going to shift positions to try to achieve the advantage? Your Honor, I'll contrast this with the last case. We are not shifting positions for reasons that I don't know. My predecessor counsel did not raise in the district court an issue of pure law that implicates United States national security and foreign policy. I completely recognize, as we said in the first brief, that the court has discretion whether or not to decide these matters. I think regardless of any criticism. I don't see the United States coming in here as amicus saying, whoa, don't pay this money or anything like that. I bet you try to get them to come in. It's my guess, if you're any good. Your Honor, I'll say only this. If the court is concerned, Kubick is, among other things, a major defense contractor. We care a great deal about getting this right irrespective of the money involved. We would have welcomed the participation of the United States. It rarely seems to participate in these cases. If the court at the end of this argument, at the end of the court's conference, has any concerns about whether the positions that we are taking based on the Iranian trade regulations are incorrect, I would encourage the court to invite the Department of Treasury, Department of State, through the Department of Justice, to file a brief. We know, for example, from the U.S. Supreme Court proceedings in Wahi, that as far as the United States is concerned, this judgment absolutely is not payable right now because it became blocked in 2005 by the nuclear proliferation executive orders. Well, that's another argument. That's another argument. The Supreme Court reserved question on that one. That wasn't raised before Judge Brewster. Right. Well, after all that, Judge Brewster confirmed this award, the arbitral award, in 1999 and maybe late 1998, and that executive order was promulgated in 2005, so he could hardly have had it in mind. In any event, we would welcome an amicus brief, whatever position the United States takes. It is of paramount interest to CUBIC, its general counsel, who has spent a great deal of time on this, and me and the whole team who's worked on this, that we get this right, not just advocate our position. And you haven't tried to contact the Justice Department and get them to take a position. We have an obligation, which we haven't fulfilled, to inform the Department of Treasury about progress of this case. And you've done that. And we have done that. And the Department of Treasury, for whatever reason, we are also aware going back to efforts, I'll just put it, not to be here today, that the other side has been in contact with the same officials. Only Treasury or not State, not Justice? Treasury and State. And we do not know, and I suspect the ministry does not know, why the United States has chosen not to take a position. Okay. Interesting. Okay. You anticipated my question. I didn't hear the opposing counsel speak to the cross-appeal. No, actually not. Thank you. Okay. Case decided to stay committed. We'll hear the last case on the calendar. United States v. Ivanos.
judges: Kozinski, Hawkins, Fisher